UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

SUCRO HOLDINGS, LLC, SUCRO CAN SOURCING, LLC, SUCRO CAN CANADA, INC., and JONATHAN TAYLOR,

      Plaintiffs,

 -against-

PAUL FARMER and CSC SUGAR, LLC,

      Defendants.

------------------------------------------------------------------X

Case No.: 1:24-cv-07081

**COMPLAINT**

Jury Trial Demanded

Plaintiffs Sucro Holdings, LLC; Sucro Can Sourcing, LLC d/b/a Sucro Sourcing; and Sucro Can Canada, Inc. (collectively, the "Sucro Companies"); and Jonathan Taylor, by and through their undersigned counsel, bring this action against Defendants Paul Farmer and CSC Sugar, LLC (collectively, "Defendants"). Plaintiffs allege upon knowledge concerning their own acts and upon information and belief as to all other matters as follows:

**INTRODUCTION**

1. This case is about a disgruntled former employer and his company who are engaged in a vicious defamation campaign against his former colleague and that colleague's new business ventures whom Defendants resent due to the Plaintiffs' success in the sugar-trading business.

2. Despite a settlement agreement entered amongst the parties that was executed over eight years ago (the "Settlement Agreement"), the Defendants are actively disseminating complete falsehoods about the Sucro Companies and Jonathan Taylor, aiming to harm them in any way possible, but perhaps most notably, by harming their commercial and governmental relationships.

1

3. The Defendants have even created elaborate digital presentations, replete with fabrications about Mr. Taylor and the Sucro Companies, that they have shared (alongside other defamatory statements) with other companies in the sugar industry, banks and financial institutions, and even customs officials and the United States Department of Agriculture.

4. Due to these actions, and for the reasons detailed below, Defendants Paul Farmer and his company CSC Sugar, LLC are liable to Plaintiffs for defamation and for breaching the Settlement Agreement that has been binding on Defendants for almost a decade.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction under 28 U.S.C. § 1332 as this is a civil action between citizens of different states where the plaintiff is alleging damages in excess of $75,000 exclusive of interest and costs.

6. Plaintiff Sucro Holdings, LLC is a Florida limited liability company whose sole member is a Cayman Islands corporation. It maintains its principal place of business in Florida.

7. Plaintiff Sucro Can Sourcing, LLC does business as Sucro Sourcing and is a Florida limited liability company whose sole member is Sucro Holdings, LLC.

8. Plaintiff Sucro Can Canada, Inc. is a Canadian corporation. It is an indirect subsidiary of Plaintiff Sucro Holdings, LLC.

9. Plaintiff Jonathan Taylor is an individual domiciled in Miami-Dade County and is a citizen of the State of Florida.

10. Mr. Taylor is one of the ultimate beneficial owners of the Sucro Companies.

11. Upon information and belief, Defendant Paul Farmer ("Farmer") is a citizen of and domiciled in the State of Connecticut.

12. Defendant Farmer is the founder, president, chief executive officer and one of—if not the sole—ultimate beneficial owner of Defendant CSC Sugar, LLC.

13. Defendant CSC Sugar, LLC ("CSC") is a Delaware limited liability company with its principal place of business in New Canaan, Connecticut.

14. This action is properly before the Court because it puts in controversy an amount exceeding $75,000—exclusive of interest, costs, and attorneys' fees—in light of the wrongdoing committed by Defendants.

15. As a result of the above, there is complete diversity of citizenship between the sole plaintiffs, Jonathan Taylor and the Sucro Companies, and the defendants Paul Farmer and CSC Sugar, LLC. See 28 U.S.C. § 1332(a)(1).

16. Further, venue is proper based on the ruling of the Miami-Dade County Court.

17. Plaintiff originally filed a two-count complaint against Defendants for defamation and breach of contract in Miami-Dade County, Florida (the "Florida Action").

18. Defendants filed a Motion to Dismiss for Improper Venue in the Florida Action and argued that the breach of contract count should be brought in the Southern District of New York, New York County, Montreal, or Toronto.

19. Despite Plaintiffs' arguments that the forum selection clause in the operative Settlement Agreement is merely permissive as it related to the allegations at issue in this matter, the Miami-Dade Court ruled that the clause was mandatory and ordered the breach of contract count be brought in one of the three named jurisdictions. See **Exhibit A**.

20. This Court has personal jurisdiction over Defendants because, as Defendants have argued, they consented to this Court's jurisdiction in the global Settlement Agreement at issue in this matter, a copy of which is attached hereto as **Exhibit B**.

21. As such, based on the foregoing, jurisdiction and venue are proper pursuant to 28 U.S.C. § 1332 and the ruling of the Miami-Dade County Court.

**STATEMENT OF FACTS**

A.   **The Plaintiffs' Relationship with the Defendants**

22.   In January 2013, CSC hired Mr. Taylor as a trader who focused on international trading that included the Caribbean market.

23.   CSC and Mr. Taylor separated in August 2014.

24.   On December 23, 2014, CSC filed an action against 8122016 Canada Inc. in the Superior Court of the Province of Quebec, Canada, which was styled *CSC Sugar, LLC v. Sucro Can Inc.,* with Case No.: 50017-086013-144 (the "Quebec Action").

25.   In that lawsuit, CSC alleged non-payment of a debt.

26.   Moreover, on September 4, 2015, CSC filed a lawsuit against Mr. Taylor in the United States District Court for the Southern District of New York, which was captioned *CSC Sugar, LLC v. Taylor*, Case No.: 1:15-cv-07015 (the "New York Action").

27.   It was alleged in the New York Action that Mr. Taylor, while an employee of CSC, breached his duties of loyalty to that company.

28.   Both the Quebec Action and the New York Action were ultimately resolved on December 8, 2015, when certain of the Plaintiffs and CSC entered the global Settlement Agreement. *See*, **Exhibit B**.

29.   This Settlement Agreement included provisions regarding the exchange of mutual general releases for all actual or potential claims and for dismissals with prejudice of the Quebec and New York Actions.

30.   The Plaintiffs complied with the Settlement Agreement, such that the releases became effective as to them and the Quebec and New York actions were dismissed with prejudice.

31. Critically, the Settlement Agreement contains a non-disparagement provision that provides that "[d]uring the term of this Agreement and thereafter, the Parties agree to refrain from seeking publicity over this Agreement and the underlying subject matter and <u>not to make any false disparaging statements about each other</u>." *See* **Exhibit B** at ¶ 14 (emphasis added).

**B.     Defendants' Campaign to Harm the Sucro Companies and Mr. Taylor**

32. Despite having fully resolved the prior matters, despite having agreed to not disparage the Plaintiffs, and despite more than eight years having passed since that agreement, Mr. Farmer and CSC have engaged in a campaign to spread vicious lies against the Sucro Companies and Mr. Taylor personally.

33. The Sucro Companies operate in a highly integrated and interconnected sugar supply business.

34. The Sucro Companies operate in both the conventional refined sugar market as well as the high-growth, relatively niche, organic sugar market, with the Sucro Companies being among the largest importers of organic sugar into the United States.

35. Given that organic sugar is a significant part of the Sucro Companies' business, Defendants have disseminated falsehoods about the quality and designation of the Plaintiffs' organic sugar.

36. The Defendants have claimed that Plaintiffs' organic sugar does not truly meet the criteria to be certified as such and that the quality of the sugar is not what the Sucro Companies represent them to be.

37. Another significant portion of the Sucro Companies' business involves the importation of raw sugar to Canada, where it refines that raw sugar into refined sugar and, as a byproduct, creates molasses.

38. The molasses is then shipped to the United States, where it is further refined for additional sugar extraction.

39. There is nothing improper or unlawful about this process.

40. Defendants, however, have told crucial contacts in the sugar industry and individuals at relevant governmental authorities that the Plaintiffs are not actually shipping molasses and instead are—in violation of law—shipping liquid sugar and misrepresenting it as molasses.

41. Defendants have not only claimed that the Plaintiffs are falsely labeling liquid sugar as molasses, but also misrepresenting the quality of the shipped product.

42. According to Defendants, Plaintiffs are engaging in this "fraud" to wrongfully avoid import duties.

43. Plaintiffs, however, are doing no such thing nor engaging in any sort of fraud regarding the designation or quality of its molasses.

44. Despite this, Defendants have gone to great lengths to defame Plaintiffs. For example, attached hereto as **Exhibit C** is a collection of screen-captures of a presentation prepared by the Defendants and shown to numerous third parties in an attempt to harm the Plaintiffs.[1]

45. As shown in **Ex. C**, Defendants are claiming that Plaintiffs are "[m]is-representing liquid sugar as molasses" and "shipping liquid sugar and calling it molasses[.]"

46. Defendants are also claiming, either in addition to or in the alternative to the previous claim, that Plaintiffs are "adding non[-]sugar impurities that will be filtered out."

---

[1] **Ex. B** does not purport to be a complete version of Defendants' presentation as the screen-captures themselves suggest that the presentation consists of 16 pages or slides. Plaintiffs have been unable to secure a complete copy of any single presentation prepared by the Defendants.

47. Adding non-sugar impurities only to later filter them out would, according to Defendants, violate "the Tariff Code" and would cause a product to no longer be molasses, as Defendants claim that to be properly considered molasses, the product must have a minimum percentage of naturally occurring, non-sugar solids.

48. These false claims by the Defendants are particularly harmful as they are evocative of a practice notorious in the industry known as "stuffed molasses," as described in the lawsuit styled *Heartland By-Products, Inc. v. U.S.*, 264 F.3d 1126 (Fed. Cir. 2001).

49. Defendants, who are sophisticated players in the sugar industry, either know or should know that their defamatory statements about the Plaintiffs are false.

50. Instead, the Defendants employ their sophistication to nefarious ends, manipulating data to try and prove to Plaintiffs' business and governmental contacts that what Plaintiffs are doing is a "fraud."

51. Defendants falsely state that:

> *The Math Exposes the Fraud:*
> *Sucrocan is shipping liquid sugar and calling it molasses to avoid the duty,*
> *or*
> *They are adding non sugar impurities that will be filtered out.*

(*See* **Ex. C** at 5).

52. Regardless of which of the false alternatives Defendants want people in the sugar industry to believe, Defendants are claiming that Plaintiffs are lying about the product they ship, and thus are violating a host of laws as well as opening themselves up to liability.

53. Upon information and belief, Defendants have shared versions of this presentation and made the above-referenced and similar defamatory statements to various industry players such as Amerra Capital, American Sugar Refining, Bank of Montreal, Brown Brothers Harriman, Canadian Sugar Institute, Florida Crystal Corporation, Ingredients Plus, Lantic Inc., Macquarie

Bank, Michigan Sugar, Natural Sugar Marketing, R. Markey & Sons, Rabobank, Raízen Energia, Redpath Sugar, the Russell Group, U.S. Sugar Corporation, and others.

### C. Defendants' False and Disparaging Campaign Bears Fruit

54. Though Plaintiffs have only recently become aware of this campaign and the nature of the false representations about the Plaintiffs by the Defendants, Defendants' vendetta has profoundly harmed the Plaintiffs' reputation and damaged them in various other ways.

55. First, the Defendants' unfounded accusations of fraudulent activity, such as misrepresenting liquid sugar as molasses to evade import duties, have directly tarnished the Plaintiffs' reputations in the sugar industry, in the financial industry, with governmental entities, and writ large.

56. The Defendants' campaign to spread falsehoods about the Plaintiffs has adversely impacted the Plaintiffs' credibility with influential officials in the sugar trading industry and banking institutions, who all hold significant sway over business decisions and investments.

57. The Defendants' false and disparaging statements communicate, among other things, that doing business with the Plaintiffs is high-risk. This perception can heavily influence business opportunities and financial backing.

58. The Defendants have also actively deterred potential business partnerships. Multiple entities have already refused to enter commercial agreements with the Plaintiffs, such as by refusing to purchase Plaintiffs' products, offer credit to the Plaintiffs, or otherwise deal with the Plaintiffs, because they have been misled by the Defendants' defamatory statements.

59. The Defendants have also actively undermined established relationships with this false information, causing these relationships to either cease doing business with the Plaintiffs or

to only do business with the Plaintiffs on terms less favorable to the Plaintiffs than would have otherwise been made but for the false, disparaging statements.

60. In addition, the dissemination of such false allegations can prompt legal complications and regulatory scrutiny, further jeopardizing the Plaintiffs' standing in the industry.

61. Indeed, the Sucro Companies recently received a request for information (CBP Form 28) from U.S. Customs and Border Protection requesting information regarding the classification, valuation, and other data related to imports.

62. Upon information and belief, this request from U.S. Customs and Border Protection is the result of the Defendants' campaign to disparage Plaintiffs through the dissemination of false accusations.

63. In other words, the Defendants' vicious and false campaign has inflicted both immediate and future harm on the Plaintiffs' prospects in the competitive, relatively small world of sugar trading.

## FIRST CAUSE OF ACTION
### (Breach of Contract as against all Defendants)

64. Plaintiffs restate and reallege herein all of the allegations contained in the preceding paragraphs as if fully set forth herein.

65. The Settlement Agreement is a valid and binding contract amongst the parties.

66. Under the terms of the Settlement Agreement, CSC agreed to "refrain from seeking publicity over this Agreement and the underlying subject matter and not to make any false disparaging statements about [Mr. Taylor and Sucro Can Canada Inc.]." *See* Ex. B at ¶ 14.

67. Defendants' vicious campaign to disparage and harm Plaintiffs is a breach of the foresaid non-disparagement provisions of the Settlement Agreement.

68. As a result of Defendants' foresaid breach, Plaintiffs have been caused to suffer substantial damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against the Defendants as follows:

A. Compensatory damages in an amount to be determined at trial;

B. Consequential damages in an amount to be determined at trial;

C. Punitive damages in an amount to be determined at trial;

D. An award of pre- and post-judgment interest, attorneys' fees, costs, and disbursements in connection with this action; and

E. Such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
September 18, 2024

                                           Respectfully submitted,

By:      */s/ Imran H. Ansari*
          Imran H. Ansari, Esq.
          AIDALA, BERTUNA & KAMINS P.C.
          546 5th Avenue, 6th Floor
          New York, New York  10036
          (212) 486-0011
          iansari@aidalalaw.com

          Jordi C. Martinez-Cid, Esq.
          (*Pro Hac Vice* Admission Pending)
          MARTINEZ-CID LAW
          1 SE 3rd Avenue, Suite 2300
          Miami, Florida 33131
          (305) 789-5911
          jmartinez-cid@martinez-cidlaw.com

          Whitley Mann, Esq.
          (*Pro Hac Vice* Admission Pending)
          MARTINEZ-CID LAW
          1 SE 3rd Avenue, Suite 2300
          Miami, Florida 33131
          (407) 694-5734
          wmann@martinez-cidlaw.com

          *Attorneys for Plaintiffs*